Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>IDEAL PLAZA INVESTOR ASSOCIATES, LLC, a New Jersey Limited Liability Company; and KIMSCO, INC., a New Jersey Corporation,<br><br>Defendants. | Case No. 3:26-cv-13961<br><br>**COMPLAINT** |

## <u>Introduction</u>

Plaintiff, DENNIS MAURER, an individual ("Plaintiff"), on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendants, IDEAL PLAZA INVESTOR ASSOCIATES, LLC, a New Jersey Limited Liability Company ("Ideal Plaza"), and KIMSCO, INC., a New Jersey Corporation ("Kimsco") (collectively, "Defendants"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise *sui juris*. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, IDEAL PLAZA INVESTOR ASSOCIATES, LLC, owns the parcel of land which encompasses the place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD, and, upon information and belief, leases a portion of that parcel to Kimsco.

3. Defendant, KIMSCO, INC., operates a place of public accommodation, a restaurant known as KFC ("KFC"), alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

4. Defendants' property/place of public accommodation – a restaurant known as KFC, located within a shopping center whose other tenants include Playa Bowls, Sun Dental, ADI Performing Arts Academy, and Structure Salon – is located at 222 Route 37 East, Toms River, NJ 08753 (also known as 224 Route 37 East, Block 646, Lot 9 on the municipal tax map of the Township of Toms River, Ocean County) (the "Property").

5. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*[1]

---

[1]*See also* 28 U.S.C. §§ 2201 and 2202.

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C. § 1367.

8. Each of the Defendants owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. Each of the Defendants is thus required to comply with the obligations of the ADA.[2]

9. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of Title III.[3] Although the allocation of responsibility for compliance may be determined by lease or other contract as between the landlord and its tenant, any such allocation does not relieve either of the Defendants of their obligations to the Plaintiff. Accordingly, each of the Defendants is responsible to the Plaintiff for the removal of all of the barriers to access identified herein, throughout the entirety of the Property.

10. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

## Factual Background

11. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal

---

[2] 28 C.F.R. §§ 36.201(a) and 36.104.
[3] 28 C.F.R. § 36.201(b).
[4] As defined by 28 C.F.R. § 36.105(b)(1)–(2).

enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

12. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

13. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs – the same holds true for the Property which forms the basis of this action.

14. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms (even when designated “accessible” or “handicapped”). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

15. As part of his duties within The Independence Project, Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by the advocacy group and/or its members. Such properties are inspected by Mr. Maurer, or other members (based on scheduling and geography), in order to determine if such have been made accessible and continue to remain in compliance; it is his normal practice to inspect the properties under his purview at least twice per year. Additionally, Mr. Maurer inspects additional properties that he

visits as a patron, or when they are incident to his inspection routes, and/or when they are along his usual travel routes.

16. The properties in close proximity to the Property which have previously been subject to litigation by The Independence Project and/or its members for non-compliance with the ADA, and are now subject to reinspection by Mr. Maurer, include the following:

a. 290 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. CT TR Holdings LLC*, No. 3:19-cv-06573 (D.N.J. filed Feb. 22, 2019)

b. 213 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. DHG*, No. 2:19-cv-06503 (D.N.J. filed Feb. 21, 2019)

c. 955 Hooper Avenue, Toms River, NJ 08753; *The Independence Project, Inc. v. Parsko, Inc.*, No. 3:18-cv-00683 (D.N.J. filed Jan. 17, 2018)

d. 132 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. White Castle System, Inc.*, No. 2:13-cv-01654 (D.N.J. filed Mar. 18, 2013)

17. Mr. Maurer has visited the Property on several occasions, including on or about February 27, 2026, and on or about June 29, 2026, when he entered KFC and patronized the restaurant as a bona fide patron with the intent to avail himself of the goods and services offered to the public within. During those visits Mr. Maurer encountered the barriers to access at the Property's parking area and exterior route, as well as those within KFC – including the sales counter, the self-service beverage dispensers, and the restroom – and found the Property to be rife with violations of the ADA, both in architecture and in policy.

18. Mr. Maurer's most recent visit to the Property occurred on or about August 24, 2026. On that occasion the barriers to access within the designated accessible parking space and along the exterior route to the entrance – described below – precluded Mr. Maurer from safely

parking, exiting his vehicle, and entering KFC; he was instead forced to use the drive-thru in order to purchase his meal. Mr. Maurer was thereby denied the opportunity to enter the restaurant and enjoy its goods and services on equal terms with non-disabled patrons.

19. Mr. Maurer and his family frequently vacation at the Jersey Shore. In doing so, Mr. Maurer has stayed at several hotels in close proximity to the Property,[5] including during his August 2026 visit, and he plans to continue to do so in the future when his family is vacationing at the Jersey Shore, including near Long Beach Island and Seaside Heights. The Property is located along Route 37 East – the principal route between the Garden State Parkway and the hotels in Toms River and Seaside Heights at which Mr. Maurer stays.

20. Further, Mr. Maurer travels to the area approximately once per month to visit Eastern Dental in nearby Manahawkin[6] for his son's ongoing orthodontia treatments. Moreover, each member of Mr. Maurer's family uses Eastern Dental as their general dental practitioner for regular cleanings and other dental work.

21. Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, and New York. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804

---

[5]Including Howard Johnson by Wyndham Toms River, 955 Hooper Avenue, Toms River, NJ 08753; Sunset Motel, 56 Webster Avenue, Seaside Heights, NJ 08751; and Cloud 9 Inn, 124 Hamilton Avenue, Seaside Heights, NJ 08751.

[6]Eastern Dental, Manahawkin Village Shopping Center, 715 Route 72 West, Manahawkin, NJ 08050.

b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013

c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020

d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028

e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757

f. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073

g. Saratoga Race Course, located at 267 Union Ave, Saratoga Springs, NY 12866

22. The Property is located just off Exit 82 of the Garden State Parkway, and is on Mr. Maurer's route from his home north on the Garden State Parkway to Monmouth Park, which he travels to several times per year.

23. In sum, the Property is (1) a place Mr. Maurer has visited as a patron on several occasions, (2) in close proximity to the hotels at which he has stayed and will continue to stay when vacationing at the Jersey Shore with his family, (3) in the area to which he travels approximately once per month for his family's dental care in Manahawkin, (4) near several other properties inspected by Mr. Maurer for ADA compliance, and (5) on his route north on the Garden State Parkway to Monmouth Park.

24. Mr. Maurer will return to the Property in the future when traveling to and from the hotels in Toms River and Seaside Heights, when traveling to the area for his family's dental appointments in Manahawkin, when traveling to Monmouth Park, and when performing inspections at the properties in the vicinity. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with respect to ADA compliance – he hopes his return visits are not further deterred nor made in vain.

25. Mr. Maurer has physically visited the Property and personally encountered exposure to architectural barriers and otherwise harmful conditions that have caused him

embarrassment and frustration, endangered his safety, and – on his most recent visit – deterred him from entering KFC at all.

26. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendants.

27. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Property as described, but not necessarily limited to the barriers he has personally encountered or observed – which are listed in Paragraph 35 of this complaint.

28. Following any resolution of this matter Plaintiff will ensure that the Defendants undertake the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

## COUNT I
## Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

29. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

30. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[7]

[7] 42 U.S.C. § 12101(a)(1).

31. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[8]

32. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability."[9]

33. The Defendants have discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

34. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 35 is both technically feasible and readily achievable. Plaintiff's expert has based this judgment on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

35. The following are architectural barriers and violations of the ADA that Mr. Maurer has either personally encountered or observed during his visits to the Property, including barriers that precluded him from accessing certain areas and features of the Property:

**Parking and Exterior Accessible Route**

a. The designated accessible parking space serving KFC is not maintained – the painted International Symbol of Accessibility and the blue striping are faded and

---

[8] *Tennessee v. Lane*, 541 U.S. 509, 535–36 (2004) (Ginsburg, J., concurring).
[9] 42 U.S.C. § 12188(a)(1).

worn – contains running slopes and cross slopes steeper than 1:48 (2.08%), is not served by a marked access aisle, and lacks proper identification signage, as the only accessibility sign is mounted low on the building wall beside the entrance rather than at the head of the space; violations of the ADAAG and Sections 216.5, 302, 502, 502.3, 502.4, and 502.6 of the 2010 ADA Standards and 28 C.F.R. § 36.211, which require floor and ground surfaces to be stable, firm, and slip resistant, each accessible parking space to be served by an access aisle at least 60 inches wide (96 inches where serving a 96-inch-wide van space) that extends the full length of the space it serves, is marked so as to discourage parking in it, and adjoins an accessible route, parking spaces and access aisles with no slopes steeper than 1:48 (2.08%) in any direction, and each accessible parking space to be identified by a sign showing the International Symbol of Accessibility mounted with its bottom at least 60 inches above the ground, with van-accessible spaces designated "van accessible," and which require a public accommodation to maintain its accessible features in operable working condition. Mr. Maurer's van utilizes a fold-out ramp which requires a flat, stable surface and an adjacent clear area in order to fully extend; the slopes within the designated space and the lack of an access aisle prevent him from safely deploying his ramp and exiting his vehicle. On his most recent visit these conditions precluded Mr. Maurer from parking and entering KFC altogether.

b. The curb ramp serving the designated accessible parking space is located beside the space rather than within an access aisle, on an improper route, so that reaching it requires Mr. Maurer to travel through the vehicular way and behind parked vehicles; violations of the ADAAG and Sections 402, 406, 406.5, and 502.3 of the

2010 ADA Standards, which require access aisles to adjoin an accessible route, curb ramps and their flared sides to be located so that they do not project into vehicular traffic lanes, parking spaces, or access aisles, and curb ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), flared sides no steeper than 1:10 where pedestrians must travel across them, and a level landing at least 36 inches long at the top of the ramp. When attempting to travel from the parking area to the entrance Mr. Maurer is forced to travel behind vehicles and within the path of moving traffic in order to reach the curb ramp, endangering his safety.

c. The parking spaces fronting KFC – including the designated accessible parking space – abut the sidewalk along the building without parking stops, so that the overhang of a parked vehicle reduces the clear width of the exterior accessible route leading to the entrance and renders it impassable when a vehicle is present within the space; violations of the ADAAG and Sections 402, 403.5.1, and 502.7 of the 2010 ADA Standards, which require an accessible route clear width of at least 36 inches and require parking spaces and access aisles to be designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. When vehicles are parked within these spaces Mr. Maurer cannot pass along the sidewalk to the entrance in his wheelchair.

d. The exterior accessible route leading from the parking area to the KFC entrance is impeded by running slopes steeper than 1:20 (5%), cross slopes steeper than 1:48 (2.08%), and abrupt changes in level greater than ¼ inch – including cracked and deteriorated asphalt within the parking area and drive aisle that must be crossed to

reach the entrance; violations of the ADAAG and Sections 302, 303, and 402 of the 2010 ADA Standards, which require floor and ground surfaces to be stable, firm, and slip resistant, and require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2). These conditions have presented Mr. Maurer with a tipping hazard which could cause injury from a fall and damage to his wheelchair.

e. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles) – only one designated accessible parking space serves KFC within the shopping center's shared parking lot; a violation of the ADAAG and Sections 208 and 502 of the 2010 ADA Standards, which require the number of accessible spaces set by Table 208.2 based on the total number of parking spaces provided, with at least one of every six accessible spaces being van accessible, located on the shortest accessible route to an accessible entrance. Due to the lack of compliant accessible parking (specifically the lack of a compliant van access aisle), Mr. Maurer has been forced to park away from KFC so that he could freely access his vehicle via his fold-out ramp; doing so and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle.

f. The Property fails to provide a continuous accessible route throughout the entirety of the shopping center which connects KFC to the Property's other tenants;

violations of the ADAAG and Sections 206.2.2 and 402 of the 2010 ADA Standards, which require at least one accessible route connecting all accessible buildings, facilities, elements, and spaces on the same site, and require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2). These barriers have prevented Mr. Maurer from traveling across the entirety of the Property in his wheelchair without returning to the vehicular area of the lot.

g. The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or public transportation route – there is no accessible pedestrian route connecting the Route 37 East frontage to the KFC entrance. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for access and transportation, and a violation of the ADAAG and Section 206.2.1 of the 2010 ADA Standards, which requires at least one accessible route within the site from public streets and sidewalks, public transportation stops, and accessible parking to an accessible entrance.

**<u>Access to Goods and Services</u>**

h. KFC provides a sales and service counter which is mounted beyond the prescribed reach ranges (above 36 inches AFF); a violation of the ADAAG and Sections 308 and 904.4 of the 2010 ADA Standards, which require operable parts to be mounted between 15 and 48 inches above the floor, and sales and service counters to provide

a portion at least 36 inches long and no higher than 36 inches above the floor, with a clear floor space positioned for a parallel or forward approach. Due to the height of the counter Mr. Maurer cannot make use of it to place his order, pay, and receive his food in the same manner as non-disabled patrons.

i. KFC provides self-service beverage dispensers whose operable parts are mounted beyond the prescribed reach ranges; a violation of the ADAAG and Sections 308 and 904.5 of the 2010 ADA Standards, which require self-service dispensing devices for food and beverages to comply with Section 308, which places operable parts no higher than 48 inches above the floor for an unobstructed reach, and no higher than 44 inches where the reach is over an obstruction 20 to 25 inches deep, with a clear floor space positioned for a forward or parallel approach. Due to their height Mr. Maurer cannot independently serve himself a beverage.

**Restrooms**

j. The restroom within KFC is inaccessible to Mr. Maurer and contains barriers to access including an inaccessible water closet and a lack of wheelchair maneuvering space; violations of the ADAAG and Sections 601 and 603 of the 2010 ADA Standards, which require a turning space (a 60-inch diameter circle or a T-shaped space) within the room and doors that do not swing into the clear floor space of any fixture. These barriers have prevented Mr. Maurer from freely using the restroom.

k. The dispensers within the KFC restroom are improperly mounted outside of the prescribed reach ranges; a violation of the ADAAG and Sections 308 and 604.7 of the 2010 ADA Standards, which require dispensers and other operable parts to be mounted between 15 and 48 inches above the floor; Section 604.7 further requires

the toilet paper dispenser to be located 7 to 9 inches in front of the water closet (measured to the centerline of the dispenser) with its outlet 15 to 48 inches above the floor. Mr. Maurer is unable to make use of these dispensers due to their improper location.

l. The lavatory within the KFC restroom lacks the requisite knee and toe clearance; a violation of the ADAAG and Sections 306 and 606 of the 2010 ADA Standards, which require the front of the lavatory rim or counter to be no higher than 34 inches above the floor, knee clearance at least 27 inches high and toe clearance at least 9 inches high beneath it, and exposed water supply and drain pipes to be insulated or otherwise configured to protect against contact. Due to these barriers Mr. Maurer could not fully approach the sink in order to wash his hands.

m. The accessible water closet within the KFC restroom contains a toilet with an improper centerline and lacks properly mounted grab bars; violations of the ADAAG and Sections 604.2, 604.5, and 609 of the 2010 ADA Standards, which require the water closet centerline to be 16 to 18 inches from the side wall or partition, a side-wall grab bar at least 42 inches long located no more than 12 inches from the rear wall and extending at least 54 inches from it, a rear-wall grab bar at least 36 inches long extending at least 12 inches on one side of the centerline and 24 inches on the transfer side, and grab bars mounted 33 to 36 inches above the floor with 1½ inches of clearance from the wall. Due to these barriers Mr. Maurer cannot independently transfer to and use the toilet.

n. The accessible water closet within the KFC restroom lacks the required clearance and contains an improperly mounted flush control; violations of the ADAAG and

Sections 604.3 and 604.6 of the 2010 ADA Standards, which require a clearance around the water closet at least 60 inches wide, measured perpendicular from the side wall, and 56 inches deep, measured perpendicular from the rear wall, free of all elements other than the associated grab bars, dispensers, sanitary napkin disposal units, coat hooks, and shelves, and flush controls that are hand operated or automatic, comply with Section 309, and are located on the open side of the water closet. Due to these barriers Mr. Maurer cannot position his wheelchair alongside the water closet in order to transfer, nor can he reach the flush control.

36. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[10]

37. The discriminatory violations described in Paragraph 35 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally encountered or observed by Mr. Maurer. Given the violations discovered and listed herein, the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the

[10] 28 C.F.R. § 36.104.

Plaintiff may amend this complaint in order to provide proper notice to the Defendants regarding the full scope of this action.[11]

38. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

39. Defendants have discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their place of public accommodation or commercial facility in violation of the ADA.

40. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[12]

41. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities – including, as described above, by failing to maintain the designated accessible parking space and its markings and signage.[13]

42. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual

---

[11] *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them); *accord Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) (per curiam) (plaintiff who used a wheelchair had standing to challenge barriers at a restaurant related to his disability that he had not yet encountered); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) (plaintiff who encountered a barrier had standing to challenge other barriers at the property related to his disability).

[12] 42 U.S.C. § 12182(b)(2)(A)(iv).

[13] 42 U.S.C. § 12182(b)(2)(A)(ii).

with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[14]

43. Pursuant to 28 C.F.R. § 36.304(a) the Defendants shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

44. The ADA contains no "grandfather" provision. Title III's barrier-removal obligation applies to every existing place of public accommodation without regard to when it was constructed,[15] and the "grandfather" provisions often found in local building codes do not exempt a public accommodation from its obligations under the ADA.[16] A facility's age bears only on which standard governs a given element, not on whether the ADA applies; the sole protection the regulations afford existing elements is the limited safe harbor of 28 C.F.R. § 36.304(d)(2), which applies only to elements that already comply with the 1991 Standards.

45. If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993,[17] then the Defendants' facility must be readily accessible to and usable by individuals with disabilities in accordance with the 1991 Standards or, for construction commenced on or after March 15, 2012, the 2010 Standards.[18]

46. Pursuant to 28 C.F.R. § 36.402(a)(1), "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities,

---

[14] 42 U.S.C. § 12182(b)(2)(A)(iii).
[15] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).
[16] U.S. Dep't of Justice, Civil Rights Div., *ADA Update: A Primer for Small Business* (Mar. 2011).
[17] As defined by 28 C.F.R. § 36.401(a)(2).
[18] 28 C.F.R. § 36.406(a).

including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[19] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

47. 28 C.F.R. § 36.304(d)(2) controls with respect to the corresponding technical and scoping specification to which each element that has not been altered must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications in the 1991 Standards, are not required to be modified to comply with the 2010 Standards.

b. Before March 15, 2012, elements that did not comply with the 1991 Standards were required to be modified to comply with either the 1991 Standards or the 2010 Standards.

c. On or after March 15, 2012, elements that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

48. Plaintiff is not required to notify the Defendants of their violations of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Mr. Maurer has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

---

[19] 28 C.F.R. § 36.402(a)(2).

49. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendants, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

50. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendants.

51. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property and make such readily accessible to and usable by the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendants cure all violations of the ADA.[20]

**WHEREFORE**, Plaintiff respectfully demands:

a. The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.

b. Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein – and those later found through discovery – within the next six months; (2) make the Property accessible to and usable by individuals with disabilities; and (3) require the Defendants to make reasonable modifications in policies, practices, or procedures, to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

---

[20] 42 U.S.C. § 12188(b)(2).

c. An Order requiring the Defendants to cease their discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

**COUNT II**
**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 *et seq.***

52. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

53. The Property is a place of public accommodation as defined by N.J.S.A. 10:5-5.

54. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[21]

55. As set forth above, the Defendants have violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

56. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury through the Defendants' actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

[21]N.J.S.A. 10:5-4.

**WHEREFORE**, Plaintiff respectfully demands:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the LAD.

c. An injunction ordering the Defendants to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses, including expert fees and costs.

e. An order requiring the Defendants to cease their discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 26th day of October 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*